729 So.2d 658 (1999)
Debbie Pryor Wife of/and Jason PRYOR, Individually and on Behalf of the Estate of Their Minor Children, Jason, Jonathan and Jordan
v.
UNITED SERVICES AUTOMOBILE ASSOCIATION and Thomas Juneau.
No. 98-CA-1371.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1999.
Writs Denied April 30, 1999.
*659 Robert L. Manard, Manard and Buck, New Orleans, LA, for plaintiffs/appellees.
John T. Suttles, Jr., Timothy G. Schafer, Schafer & Schafer, New Orleans, LA, for defendants/appellants.
WALTZER, Judge.
Plaintiffs, the Pryors, sued defendants, Ricardo Leoni and his insurer, after an accident between two vehicles driven by Leoni and Debbie Pryor. The jury found in favor of the plaintiffs and awarded $1,185,000.00.

STATEMENT OF FACTS AND HISTORY OF THE CASE
On 13 April 1994, both Pryor, driving a white Nissan Sentra, and Leoni with two friends, driving a four door Ford Explorer, entered Lee Circle from the uptown direction. Pryor headed for the Exxon gas station on the uptown lake corner of the traffic circle, and Leoni wanted to enter the eastbound lanes of Interstate 10 at the uptown lake corner of the circle. Construction on the day of the accident impeded normal traffic flow.
At the time of this accident, the downtown side of the intersection of Howard Avenue and Lee Circle consisted of two lanes. In March 1994, the city, through a contractor, *660 redesigned this portion of the circle and reduced the three lanes to two lanes.
At the light on the west edge of the circle, the Leoni vehicle was behind the Pryor car. Immediately before the accident, Pryor testified that she attempted to turn right from the left lane of Lee Circle into the inside, left lane of Howard Avenue. At trial Pryor testified that the point of impact occurred in the right lane of the circle before either the downtown streetcar tracks or the uptown tracks and the vehicles came to rest some distance from the initial impact on the downtown tracks. However, at her deposition on 31 August 1995, Pryor testified that the collision, point of initial impact between the two vehicles, occurred on the uptown side of the downtown tracks. Pryor also testified that she did not see the Leoni vehicle at any time before impact.
Officer Charles Davis, employed by the New Orleans Police Department and assigned to the Sixth District, testified at the trial. The trial court recognized, without objection, Officer Davis as an expert in the field of accident investigation. Davis testified about the contents of his police report. He testified that the portion of Lee Circle consisted of three lanes, a left lane, a right lane, and a right turn only lane. He also testified that Leoni stated at the scene that he was in the left lane. Furthermore, he testified that Pryor stated at the scene that she was in the right lane of Lee Circle and that the Leoni vehicle struck her as she attempted to make a right turn onto Howard Avenue. The trial court disallowed some of Davis' conclusions regarding the facts precipitating the accident, but he allowed Officer Davis' diagram, a part of the police report, to be admitted. This diagram depicts Davis' conclusions regarding the positions of the vehicles at the time of the collision. He testified that he ticketed Leoni for improper lane usage. Davis concluded that the right front of Pryor's car collided with the left side of the Leoni vehicle, the driver's door.
Plaintiffs introduced the testimony of two experts in the area of accident reconstruction. Both Raymond Burkart and Dr. Franklin Griffith testified for plaintiffs, and they concluded that Leoni, whether the initial point of impact is determined to be where Pryor placed it at trial or where she placed it at her deposition, entered the right turn only lane after the stop bar, the white line on the street surface, but before the collision.
The Pryors testified about the extent of damages. Debbie Pryor sought treatment for her injuries immediately after the accident. She treated with Dr. Richard Warren, a neurologist, for her injuries. She also treated with Dr. Kenneth Vogel, a neurosurgeon. Dr. Vogel treated Pryor from 17 May 1994, for injuries to her neck, arm, shoulder, and lower back. Dr. Vogel performed the first surgery required to treat plaintiff's injuries. He did a four-level neurotomy in September 1994. Dr. Vogel referred Pryor to an orthopedic surgeon, Dr. John J. Watermeir. Dr. Watermeir began treating Pryor on 18 July 1995, and he performed the second surgical procedure to treat the injury to her neck. He removed two cervical discs. Dr. Watermeir performed surgery, the third surgical procedure used to treat plaintiff's injuries, on her wrist, after he diagnosed carpal tunnel syndrome. Dr. Watermeir also performed the fourth surgery to correct plaintiff's injuries. He performed surgery on her lower back, a titanium cage fusion.
Before the accident, Pryor worked two jobs. She worked as a nurse's assistant for a home health care agency. She also did data entry. Both Dr. Watermeir and Bobby Roberts, an expert in the area of vocation evaluation testified about and explained that plaintiffs injuries, and limitation caused by those injuries, prohibit her from performing the work she did before the accident.
Debbie Pryor and her husband testified about changes in their relationships since the accident. Pryor explained that she has been unable to do what she did for her family before the accident. She explained that her sexual relationship with her husband had suffered. Her husband also testified about this deterioration in their relationship, and he described how active she was before the accident and how she was now unable to do activities for and with him and their children.
After plaintiffs rested, the defendants introduced numerous witnesses. John Excinios *661 testified as an expert on the subject of traffic engineering. He explained the configuration of the traffic circle and the traffic devices employed at this intersection.
Defendants introduced the testimony of John Rigol, an expert in the area of accident reconstruction. Rigol concluded that the accident could not have occurred at the point identified at trial by plaintiff and her experts, considering the angles. He also concluded that the collision occurred after Leoni changed from the left lane to the right lane of the circle after the stop line but before the downtown streetcar tracks when Pryor attempted to change lanes in the circle.
Leoni's friends testified for defendants. David Ardoin testified that the three men in the Leoni vehicle had a tee time of four o'clock at Eastover Country Club on the afternoon of the accident. They were not late for their tee time before the accident. Ardoin and Thomas Juneau saw the Pryor car immediately before the collision. They stated that Pryor was past the left lane of Howard, and the collision occurred just before the downtown tracks, and they saw her car enter the right lane and side-swipe them.
Defendant, Ricardo Leoni, testified that he entered Lee Circle in the left lane and stopped twice for traffic lights. After the second light, he changed from the left lane, which he remembered being congested, to the right lane. He denied ever entering the right turn only lane.
Plaintiffs sued Leoni and his insurer for damages sustained from the accident of 13 April 1994. Trial was held in November 1997. The jury returned a verdict finding that Leoni's fault caused the accident. The jury also found that Pryor did not cause the accident. The jury awarded $185,000.00 in past and future medical expenses, $550,000.00 in past and future physical and mental pain and suffering, $50,000.00 for past loss of earnings, $300,00.00 for future loss of earning capacity, $25,000.00 to her husband and each of her three sons for loss of consortium. The trial court signed a judgment for the plaintiffs and against the defendants for $1,185,000.00. Defendants appeal this judgment. Plaintiffs answered the appeal seeking additional damages.

STANDARD OF REVIEW
Generally, when an appellate court reviews the factual findings of a trial court, we are limited to a determination of manifest error. Hill v. Morehouse Parish Police Jury, 95-1100 (La.1/16/96); 666 So.2d 612, 614. However, when legal errors of the trial court have tainted the fact finding process, we do not review the verdict under the manifest error standard; but when the record is complete, we review de novo the record and determine the facts proved by a preponderance of the evidence. Rosell v. ESCO, 549 So.2d 840, 844 fn. 2 (La.1989).
Defendants argue for de novo review of the jury's factual findings because the trial court's errors prejudiced the process. We disagree. Essentially, defendants argue that the trial court erred in admitting certain evidence (a diagram from the police report, testimony about traffic citations, and the testimony of Bobby Roberts, a vocation evaluation specialist) and failing to admit certain evidence (the testimony of Dr. David Clark, a vocation rehabilitation specialist, and a sketch of the accident scene). Moreover, defendants argue that plaintiffs' counsel's remarks and arguments were "calculated to arouse the passion of the jury."
Before we review de novo a jury verdict for alleged errors in the conduct of the trial, we must determine that the trial court abused its great discretion. Ibieta v. Star Casino, Inc., 98-0314 (La.App. 4 Cir. 10/9/98); 720 So.2d 143.
Although defendants objected to the admission of the police report, they encouraged the use of the report to allow the officer to refresh his memory.[1] Additionally, they questioned Officer Davis about the diagram on cross-examination, with the obvious aim to create doubt about the Officer's veracity or capacity to remember. Thus, they waived any objection to its admission. Johnson v. H.W. Parson Motors, Inc., 231 So.2d 73, 78-79 (La.App. 1 Cir.1970). Moreover, the record does not contain evidence of any objection to *662 the testimony of Bobby Roberts, the testimony about the issuance or non-issuance of traffic citations, or the alleged inflammatory remarks of counsel.[2]
Furthermore, the record does not persuade us that the trial court abused its discretion in refusing to admit the testimony of Dr. Clark or the sketch done at Leoni's deposition. Ibieta, supra at 146. Defendant's attempted to introduce the sketch on redirect examination, but the court concluded that such evidence exceeded the scope of cross-examination. The trial court excluded Dr. Clark's testimony because it determined that this testimony exceeded the scope of his expertise. We are not persuaded that this decision constituted an abuse of discretion.

FAULT
Each party in this dispute alleges that the other party's negligence caused the accident. In an action to recover damages allegedly caused by another's negligence, plaintiffs have the burden of proving negligence on the part of defendants by a preponderance of the evidence. Cangelosi v. Our Lady of the Lake Regional Medical Center, 564 So.2d 654, 664 (La.4/20/90).
Debbie Pryor testified that she was in the left lane of Lee Circle when she attempted to turn right into the left lane of Howard Avenue and that the driver's side of Leoni's vehicle struck the passenger side of her car. At her deposition in August 1995, in answer to repeated questions about where the collision occurred and where the point of impact was located on the street, she explained her response that the vehicles collided "before the tracks" by drawing an "X" for the point of impact after the downtown street car tracks. However, at trial in November 1997, she explained her confusion at the deposition and stated that the cars collided in the left lane of Howard Avenue.
Officer Davis investigated the accident. After reviewing the accident report, he testified that three lanes existed at the intersection of Howard Avenue on the day of this accident. However, he admitted that he used a pre-drawn diagram and that the configuration did change near the time of the accident.[3] He took statements from the drivers only. He recorded that plaintiff stated she was in the right lane turning into Howard Avenue and that Leoni stated he was in the left lane. He concluded that the accident occurred because Leoni went straight in the right turn only lane, and he ticketed Leoni. Plaintiffs also introduced the testimony of two experts on the subject of accident reconstruction who believed the accident occurred because Leoni entered the right-turn only lane of Lee Circle and proceeded straight into Pryor's path.
Leoni testified that he never entered the right turn only lane of Lee Circle. He stated that he changed lanes after the dashed white line and that the collision occurred on the downtown streetcar tracks after the left lane of Howard. Two friends corroborated his testimony.
Defendants introduced the testimony of an expert on the subject of traffic engineering who testified that changing lanes after the stop line was acceptable. Defendants' expert on the subject of accident reconstruction testified that from his review of the facts and after inspecting the vehicles and the damaged wheel, measuring the scene, and performing several driving experiments, he believed the accident occurred when Pryor attempted to change from the left lane to the right lane of the traffic circle to reach the gas station. He also stated that the angle of the impact comported with a sideswipe.
We are mindful of the standard of review of the verdict of a properly instructed jury.
Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong ... [A]ppellate courts must constantly have in mind that their *663 initial review function is not to decide factual issues de novo ... When findings are based on determinations regarding the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said ... [When] a factfinder's finding is based on its decisions to credit the testimony of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
Rosell v. ESCO, 549 So.2d 840, 844-45 (La. 1989).
We are instructed that before a factfinder's verdict may be reversed, we must find from the record that a reasonable factual basis does not exist for the verdict and that the record establishes the verdict is manifestly wrong. Lewis v. State, Through Department of Transportation and Development, 94-2370 (La.4/21/95); 654 So.2d 311, 314. Although we accord deference to the factfinder, we are cognizant of our constitutional duty to review facts, not merely to decide if we are, as a reviewing court, would have found the facts differently, but to determine whether the trial court's verdict was manifestly erroneous-clearly wrong based on the evidence, or clearly without evidentiary support. Ambrose v. New Orleans Police Department Ambulance Service, 93-3099 (La.7/5/94); 639 So.2d 216, 221.
Our review of the entire record convinces us that the jury did not err in its decision.

DAMAGES
Defendants ask us to reduce or reverse the damage awards for future medical expenses, loss of future earning capacity, and loss of consortium. Plaintiffs answered the appeal and argue for an increase in the awards for pain and suffering, general damages, and loss of earning capacity, and they argue that the jury erred by not awarding damages for loss of services.
Defendants argue that plaintiffs did not prove the necessity of future medical expenses. Stiles v. K Mart Corp., 597 So.2d 1012, 1013 (La.1992). At trial Dr. Watermeir testified that he had not discharged Pryor from his care, although he anticipated discharging her in the future. Furthermore, Dr. Melville Wolfson, an economist, testified about the expected cost of Pryor's future medical expenses. Future medical expenses need not be established with mathematical certainty. Molony v. USAA Property and Casualty Ins. Co., 97-1836 (La.App. 4 Cir. 3/4/98); 708 So.2d 1220, 1221. The record does not persuade us that the jury erred in awarding damages for future medical expenses.
Defendants argue that plaintiff did not prove an impairment of her earning capacity. Damages for loss of earning capacity are awarded for what the plaintiff could have earned if uninjured. Konneker v. Sewerage and Water Board, 96-2197 (La.App. 4 Cir. 11/19/97); 703 So.2d 1341, 1351, writ denied 97-3137 (La.2/13/98); 709 So.2d 760. Such damages are not calculated solely by a comparison of earnings before and after the injury. Id. Dr. Watermeir testified that Pryor would always suffer some disability, with intermittent pain. Dr. Watermeir also recommended that Pryor adhere to certain permanent restrictions, including repetitive bending, stooping or lifting over thirty to forty pounds, prolonged sitting or standing, and repetitive overhead work. Bobby Roberts, an expert in vocation evaluation, testified that he did not believe that Pryor would return to the work she performed before the accident. The record supports the conclusion that Pryor suffered impairment, resulting in a loss of earning capacity. The jury did not abuse its discretion in its award for damages for loss of earning capacity.
Furthermore, we are not persuaded that plaintiffs did not prove loss of consortium claims for Pryor's three children. Although the three children did not testify, both Pryor and her husband testified that the relationship between mother and sons had suffered greatly after the accident.
Plaintiffs answered and requested an increase in the amount of the damage awards, both the general damages and special damages for loss of earning capacity and loss of services. Plaintiffs argue that the claims for loss of services and loss of earning *664 capacity were uncontroverted merely because defendants did not call an economist as a witness. Vanzant v. New Orleans Public Service, 517 So.2d 1252, 1255 (La.App. 4 Cir. 12/15/87), writ denied 519 So.2d 131 (La.2/5/88). Our review of the record clearly proves that defendants contradicted these claims. Before we increase or decrease a damage award, the initial inquiry requires a determination of whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the much discretion of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), Ballard v. National Indemnity Co. of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964), Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. den. 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Debbie Pryor suffered injuries to her neck, wrist, and lower back after this accident. She endured four surgeries. At trial she had treated for more than three years from these injuries. She testified that she had suffered intermittent pain, although she had clearly improved since the accident. Her treating physician testified that he expected to discharge her from his care in the very near future. We are not persuaded that the jury abused its discretion its award of damages.

CONCLUSION
For the above reasons, we affirm the jury's findings that Leoni's negligence caused the accident. Furthermore, we affirm the jury's awards for damages. The judgment of $1,185,00.00 against Leoni and his insurer in favor of the Pryors is affirmed.
AFFIRMED.
NOTES
[1] Only the sketch of the accident scene was ultimately admitted into evidence.
[2] The trial court sanctioned plaintiff's counsel for insulting a defense witness, and the trial court sustained defendants' objection to questions about insurance coverage. Moreover, the trial repeatedly admonished counsel about their conduct.
[3] Officer Davis had investigated approximately 200 accidents at the same location and actually had a template with the Lee Circle configuration prepared.