b JONES, Judge.
After a trial on the merits, the district court rendered judgment in favor of the plaintiff, Darrel Parker. Mr. Parker seeks reversal of the district court’s decision assessing him with 40% comparative fault. Defendant, Delta Wells Surveyors, appeals the decision of the district court in regard to the monetary damages awarded to Mr. Parker. We affirm.

FACTS

Mr. Parker, a 28-year-old deckhand, was employed aboard the M-44 motorized vessel owned by Delta Well Surveyors. The M-44 is a self-propelled twin screw spud barge located in a slip of Tiger Pass in Venice, Louisiana. In March of 1997, while the M-44 was spudded down against the dock, Mr. Parker was loading equipment owned by IronFab onto the barge. IronFab is an individual business whose yard was approximately one hundred feet from where Mr. Parker was loading. He noticed a hydraulic line on the crane was leaking oil into the dry gear box not intended to receive oil. If the reservoir was not emptied the oil would spill onto the *719 deck and cause a safety hazard to all aboard. There was no ladder available onboard the vessel. Mr. Parker stood on a 55-gallon drum to remove the |aoil from the reservoir of the crane by using a 1-gallon plastic drum. He testified that he had seen his superior, Capt. Henry Lee, empty the reservoir by standing on a 5-gallon bucket. Capt. Lee did nothing to stop Mr. Parker from using the 55-gallon drum to stand on. Capt. Lee himself testified that the oil was leaking onto the crane and had been for about a week prior to Mr. Parker’s accident. Capt. Lee further testified that he did report the condition to the proper authorities and nothing had been done to fix the problem. Capt. Lee testified that he “jerry-rigged” the mechanism to stop the oil from leaking onto the deck. His testimony was corroborated by Roberto Williams, an employee of IronFab who sometimes worked upon Delta’s M-44. Mr. Williams testified that he had complained about the oil leak to Capt. Lee on several occasions approximately four to five months prior to the accident. On this particular day, when Mr. Parker attempted to correct the ongoing problem, he fell onto the deck from standing on the 55-gallon drum and sustained injuries.
Mr. Parker was treated at Meadowcrest Hospital immediately following the accident. He suffered injuries to his head, back, right leg, right knee, rectal region and suffered prostate problems. He was treated by numerous physicians, including, but not limited to, Dr. Kenneth Adatto, an orthopedic; Dr. Barrett Richter, a chiropractor; Dr. Nichols Franco, a urologist and Dr. Kenneth Vogel, a neurosurgeon. Mr. Parker was diagnosed with multiple contusions and cervical and lumbar strain. He endured two surgical procedures. He has not worked since the accident.
| ^PROCEDURAL HISTORY
Mr. Parker sued his Jones Act employer for the unseaworthiness of the M-44 and in general negligence on the part of Delta. He filed a Petition for Damages in the 25th Judicial District Court. After a trial on the merits on August 23, 1999, the district court rendered judgment against Delta in the amount of $697,896.22 assessing Delta with 60% comparative fault and Mr. Parker with 40% comparative fault. The total sum of Mr. Parker’s award is $418,737.74:
Pain and suffering, mental anguish and loss of life’s enjoyment and disability (past and future) $ 300,000
Past medical expenses $ 42,742.16
Future medical expenses $ 10,000
Past lost wages $ 45,000.28
Future lost wages and/or impairment of earning capacity $295,154.06
Future vocational rehabilitation expenses $ 5,000
Delta filed its Motion and Order for a Suspensive Appeal requesting that this Court reverse the district court’s judgment with regard to the awards for general damages, past wage loss, loss of future earning capacity, future vocational rehabilitation expenses and future medical expenses. Mr. Parker has taken a devol-utive appeal, complaining that the assessment of 40% comparative fault is without merit.

DISCUSSION

Abuse of Discretion
Delta contends that the general damages awarded to Mr. Parker were so grossly high as to constitute an abuse of discretion by the district court. “The standard of review for damage awards requires a showing that the trier of fact abused the great discretion accorded in awarding damages and in apportioning [4fault; the award or apportionment must be so high or so low in proportion to the *720 injury or fault that it shocks the conscience.” Courteaux v. DOTD, 745 So.2d 91 (La.App. 4th Cir.1999). The district court’s Reasons for Judgment states:
“General damages of at least $350,000 are supported by the Fourth Circuit’s recent decision in Valley v. Specialty Restaurant Corp., 726 So.2d 1028 (La. App. 4th Cir.1999). In that case, the plaintiff, like Darrel Parker, underwent both lumbar and cervical neurotomies performed by Dr. Vogel. The general damage award of $350,000 was affirmed on appeal and would be an appropriate award in this case, particularly considering the testimony adduced at trial.” (Emphasis added).
Delta contends that Valley is not analogous with the instant case because Mr. Parker’s medical procedures were not as extensive as the plaintiff in Valley. Delta further suggests that the case law indicates that an award to Mr. Parker for his injuries should be limited to $40,000. Although the instant case and Valley may not have similar findings of fact, the district court found Valley analogous enough to rely on it and that is not an abuse of discretion.
Dr. Vogel testified by deposition that he performed back surgery and subsequently neck surgery on Mr. Parker. More specifically, Dr. Vogel testified that Mr. Parker underwent a lumbar neurotomy to correct the back and a cervical facet arthrogram and block to correct the neck. He testified that Mr. Parker received “satisfactory results” from the lumbar neurotomy. He further explained that the goal of the neck surgery was to resolve 80 percent or 90 percent of Mr. Parker’s pain. After the neck surgery was performed in June of 1999, Dr. Vogel prescribed rehabilitation therapy and was going to evaluate Mr. Parker in a year. Dr. Vogel concluded in his testimony that Mr. Parker would suffer from “temporary ten to fifteen percent permanent partial total body medical impairment”.
IsThis Court in Pryor v. United Services Auto. Ass’n, 729 So.2d 658 (La.App. 4th Cir.1999) upheld an award to the plaintiff of $550,000 for past and future pain and suffering. The injuries suffered by the plaintiff in Pryor were similar to those endured by Mr. Parker. Pryor arouse out of an automobile accident wherein plaintiff sued for damages sustained from the accident. The jury awarded a total of $1,185,000, $550,000 of which constituted past and future physical and mental pain and suffering. This Court affirmed the decision of the district court stating, “[An] award of $550,000 for past, and future pain and suffering was not abusively low, where driver suffered injuries to her neck, wrist, and lower back after the accident, endured four surgeries... although she had clearly improved since the accident, and her treating physician testified that he expected to discharge her from his care in the very near future”. Id. (emphasis added).
From the record in the matter subjudice, it appears that Mr. Parker’s condition at trial had improved. Although, unlike Pryor and Valley, Mr. Parker underwent only two surgeries, according to the district court, the testimony adduced at trial was enough to award Mr. Parker $300,000 in general damages. “General Damages do not have a common denominator and are determined on a case by case basis”. Bernard v. Royal Insurance Co. 586 So.2d 607 (La.App. 4th Cir. 1991). The district court did not abuse its discretion in awarding Mr. Parker these damages. The amount awarded to Mr. Parker does not “shock the conscious” enough such that this Court finds it proper to reduce the amount.
*721 Past Wage Loss and Loss of Future Earning Capacity
Delta maintains that the record does not support the district court’s award of past wage loss and future earning capacity. “Expert testimony of an economist might best prove this type of loss. However, the plaintiffs own testimony, if Incredible and truthful, may suffice in proving his claim”. Sherlock v. Berry, 487 So.2d 555 at 558 (La.App. 4th Cir.1986). The district court relied on testimony from the plaintiff and evidence from plaintiffs forensic accountant Dan Cliffe and defendant’s forensic accountant, Kenneth Bou-dreaux, Ph. D. The parties agreed that Cliffe’s report would be entered into evidence on behalf of the plaintiff in lieu of live testimony. It is apparent that the district court considered the testimony of both experts and concluded:
“The evidence did clearly show, though, that Parker would be able to return to work through this time next year, and only then would he begin to earn a rate much less then he had at Delta. Given a net of minimum wage, the future wage loss of $295,154.06”.
Supporting testimony by vocational rehabilitation expert Nancy Favaloro deduced that although Mr. Parker can possibly work as a crane operator, as argued by Delta, it would be difficult to secure such a position in the parish in which he lives. She also testified that it is very possible that his pay would not be greater than that which he received at Delta. “The very nature of lost earning capacity makes it impossible to measure loss with any kind of mathematical capacity; facts of each case must take into account a variety of factors, including plaintiffs condition prior to accident, his work record prior to and after accident, his previous earnings, likelihood of his ability to earn a certain amount but for accident, amount of work life remaining, inflation and plaintiffs employment opportunities before and after the accident.” Finnie, Jr. v. Vallee, 620 So.2d 897.
At the time of trial Mr. Parker was twenty-eight years old and had worked at Delta since 1996. Considering his age and length of employment it can be concluded that he had a future in this business had he not been injured.
|7Pelta argues that Dr. Vogel did not assign permanent restrictions on Mr. Parker. However, Dr. Vogel testified that it is possible that Mr. Parker would be restricted in his employment. When questioned about whether Mr. Parker would have a permanent 50-pound weight lifting restriction, Dr. Vogel stated, “It’s possible. You know, if at some point in time, let’s say six months down the line, he says ‘Look, I’m relatively pain free and I’d like to do some work’, we could probably do a functional capacity evaluation and determine if he’s able to do either light or sedentary work”.
Dr. Vogel testified as to the possibility and likelihood of recovery; however, his testimony concluded without certainty that Mr. Parker would fully recover. The fact still remains that Mr. Parker has a 15% chance of not fully recovering. Although his chances of recovery are higher then his chances of not recovering, we cannot ignore that Mr. Parker may fall within the 15% that does not recover completely and the district court was correct in recognizing this fact.
Future Medical Expenses
Delta further argues that the record does not support the $10,000 awarded to Mr. Parker for future medical expenses. However, Dr. Vogel did testify that Mr. Parker might incur future medical expenses but failed to specify what kind of treatments Mr. Parker may need. *722 “Future medical expenses need not be established with mathematical certainty”. Molony v. USAA Property and Casualty Ins. Co., 708 So.2d 1220 at 1221 (La.App. 4th Cir.1998).
Considering that at the end of the trial Mr. Parker’s medical expenses totaled $42,742.16, the award of $10,000 for future medical expenses is very reasonable.
The district court does not explain in its Reasons for Judgment how this amount was determined; yet, the possibility of future medical expenses coupled |swith the amount of medical bills incurred and Mr. Parker’s age in and of itself justifies the award.
Comparative Fault
By his cross appeal, Mr. Parker maintains that the district court erred in assessing him 40% comparative fault in causing the accident. There is no question that the district court found that Mr. Parker’s injuries were indeed caused by the unseaworthy condition of Delta’s vessel and thus the proximate cause of his injuries. In assessing fault, the district court relied on the Supreme Court’s standard in addressing Jones Act negligence in Vendetto v. Sonat Offshore Drilling Co., 725 So.2d 474 (La.1999):
“In a Jones Act case, the court should determine the negligence of the employer according to the standard of a reasonable employer under like circumstances, and should determine the contributory negligence of the seaman according to the standard of a reasonable seaman under like circumstances.” Citing Foster v. Destin Trading Corp., 96-0803, 700 So.2d 199 (La.1997)”.
The trial court concluded, after considering the witnesses’ testimony, that Mr. Parker’s action and/or inaction amounted to 40% comparative fault. The court made reference to the unsafe method used by Mr. Parker to empty the reservoir, the fact that he could have tied the barrel to the base of the crane to prevent it from sliding, or obtained a ladder from IronFab, or had his nearby co-workers hold the unstable drum. All of these factors played a role as to how the trial court was able to decide the issue of comparative fault.
The district court did not commit manifest error in assessing Mr. Parker with 40% comparative fault. The court assigns reasons which are consistent with the evidence presented at trial.
|a DECREE
There was no abuse of discretion in the award for general damages, past and future wage loss and future medical expenses allocated to Mr. Parker. Nor did the district court err in assessing Mr. Parker 40% comparative fault. Thus, for the reasons herein assigned, we affirm the judgment of the district court.

AFFIRMED.

MURRAY, J., concurs in part and dissents in part with reasons.