I Judge DENNIS R. BAGNERIS, SR.
The State of Louisiana through the Department of Transportation and Development (DOTD) seeks to reverse the judgment of the trial court in favor of Yvonne Updegraff (Ms. Updegraff) for damages she sustained as a result of a one-car *697 accident on Louisiana Highway 300 in St. Bernard Parish, Louisiana.

STATEMENT OF THE CASE

On April 3, 1998, Ms. Updegraff was involved in a one-car accident in which she sustained serious bodily injuries. Ms. Up-degraff filed suit against the DOTD alleging both negligence and strict liability for damages she sustained. After trial, the court ruled in favor of Ms. Updegraff awarding general damages of $600,000.00; special damages of $57,759.63; future medical expenses of $30,056.00; past lost wages of $34,533.00; future lost wages of $228,638.00; expert witnesses fees of $400.00 per expert; and Charity Hospital Intervention of $7,239.39, with all court costs and legal interest. DOTD appeals.

\9DISCUSSiON

On appeal, DOTD assigns the following errors:
(1) The trial court erred in finding that the highway or shoulder was unreasonably dangerous;
(2) The trial court erred in finding that the highway was the sole and proximate cause of the accident;
(3) The trial court erred in allowing the unsubstantiated testimony that the tree with which the plaintiff collided was on land owned by the State of Louisiana;
(4) The trial court erred in allocating 100% fault and liability to the DOTD;
(5) The trial court erred in finding that the plaintiff is precluded from returning to gainful employment.
DOTD contends that Ms. Updegraffs accident and ensuing injuries did not occur as a result of a condition of the highway. DOTD argues that the injuries were the result of Ms. Updegraffs failure to operate and maintain her vehicle in a reasonably prudent manner. DOTD argues further that Ms. Updegraff was unreasonable in that she failed to act appropriately as another vehicle approached her. Furthermore, it contends that she failed to apply her brakes prior to impact with the tree that was four hundred (400) feet away from where she initially went off the roadway and acted inappropriately by keeping her foot on the accelerator of the vehicle.

CAUSE-IN-FACT ELEMENT

A finding of cause-in-fact is essential to proving liability. Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305. The cause-in-fact element ^generally involves a “but for” inquiry which questions whether or not the injury would have occurred “but for” the defendant’s substandard conduct. Id. If this inquiry is answered in the negative, then there is no liability. Id. The trial court answered this inquiry in the affirmative in this case. In its reasons for judgment, the trial court specifically concluded that the condition of the roadway, the depression the plaintiffs tire encountered, the lack of roadway markings, stripping, and the drainage ditch along the roadway were all hazardous conditions that contributed to the accident. Further, the trial court found that “the defective condition of Louisiana Highway 300 was the sole and proximate cause of the accident.” Although we find no manifest error in the trial court’s conclusion that the highway condition was a cause-in-fact of Ms. Updegraff accident, we feel compelled to address the trial court’s factual findings concerning the condition of Louisiana Highway 300.

DUTY ELEMENT

It is well recognized that the DOTD has a duty to maintain safe highways and shoulders, see Jones v. State, *698 Dep’t of Transp. & Dev., 478 So.2d 691 (La.App. 3 Cir.1985), writ denied, 480 So.2d 743 (La.1986), and that this duty extends past the travel lanes. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566. As explained in Petre v. State ex rel. DOTD, 2001-0876 (La.4/3/02), 817 So.2d 1107:
DOTD’s duty to maintain the road and shoulder encompasses the risk that a motorist may travel onto or partially onto the shoulder. Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 572.
However, in recognizing the existence of this duty, the courts have also held that DOTD is not a guarantor of the safety of those who travel the highways of this |4state. Id. citing Ryland v. Liberty Lloyds Ins. Co., 93-1712 (La.1/14/94), 630 So.2d 1289. DOTD’s duty to the traveling public is breached only when the highway at the scene of the accident is found to be in an unreasonably dangerous condition. Id. at pp. 9-10, 775 So.2d at 1259. DOTD’s duty to maintain reasonably safe roadways encompasses persons who are foreseeably placed in danger by unreasonably dangerous conditions. Under our comparative negligence system, even motorists who are slightly exceeding the speed limit, momentarily inattentive, or otherwise negligent may recover from DOTD. Id. at p. 10, 775 So.2d at 1259-60, citing Lamaire v. Motor Convoy, Inc., 625 So.2d 638 (La.App. 3 Cir.1993), writ denied, 93-2778 (La.1/7/94), 632 So.2d 754.

BREACH-OF-DUTY ELEMENT

Although the issues on appeal are not limited to this element, a primary dispute involves DOTD’s allegation that the trial court erred in concluding Louisiana Highway 300 contained a defect that created an unreasonable risk of harm to Ms. Updegraff. The trial court’s determination in this regard is factual in nature, and we evaluate findings of the trier of fact under the manifest error or clearly wrong standard. Rosell v. ESCO, 549 So.2d 840 (La.1989); Stobart v. State, Through Dep’t of Transp. & Dev., 617 So.2d 880 (La.1993). Particularly when reviewing such a fact-intensive and fact-disputed case as the one now before us, it is often important to remind ourselves of the role this rule plays in the appellate review process. As stated by the Court in Stobart:
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840 (La.1989).
Id. at 882.
|sThe Louisiana Supreme Court announced a two-part test for the reversal of a fact finder’s determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong manifestly erroneous.
Id. citing Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). The Court continued:
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the fact finder’s conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, *699 1351 (La.1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that “the reviewing court must always keep in mind that ‘if the trial court or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.’ ” Housley v. Cense, 579 So.2d 973 (La.1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
IcJd. at 882-83.
The Supreme Court has also addressed the significance of the manifest error rule in the context of proper function allocation between the trial court and reviewing courts:
In Louisiana’s three-tiered judicial system, the function of finding facts is allocated to the trial courts. In Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973), this court stated:
When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.
Smith v. Toys “R” Us, Inc., 98-2085, pp. 7-8 (La.11/30/99), 754 So.2d 209, 214.
Proper deference to the manifest error rule protects a litigant, plaintiff or defendant, from being subjected to multiple trials by preventing the appellate courts from reevaluating and reweighing the evidence to reach an independent decision without giving due deference to the trial court’s function. With thisLreminder of our function, we turn to the evaluation of this element of the duty-risk analysis.
The trial court based its determination that Louisiana Highway 300 contained a defect that created an unreasonable risk of harm primarily on the testimony of two experts, Mr. James Clary, an expert in highway safety, design, and maintenance, and Mr. Raymond Burkart, an expert in the field of accident reconstruction. At *700 trial, Mr. Clary testified that Louisiana Highway 300 was deficient in several ways, such as the lack of centerline striping, road edge markings, proper maintenance and proper signing. Mr. Clary concluded that the condition of the roadway, specifically the depression encountered by Ms. Upde-graff s tire, the lack of roadway markings, and the drainage ditch along the roadway, were all hazardous conditions that caused the April 3,1998 accident.
Mr. Burkart testified that the primary causative factors of the accident were: (1) the lack of uniformity in the road; (2) the rut (depression) in the roadway; (3) the lack of a shoulder from which a motorist could recover if the motorist traveled off the road; and (4) the steepness of the drainage ditch.
After careful review of the entire record, we find no error in the trial court’s finding that Louisiana Highway 300 presented an unreasonable risk of harm insofar as the rut (depression) in the roadway, the lack of shoulders, lack of uniformity in the road, and the lack of signs and markings warning motorists of potential dangerous conditions in the roadway. However, we do not find or agree with the trial court’s finding that the drainage ditch presented an unreasonable risk of harm or was a cause-in-fact of the harm sustained by Ms. Upde-graff under the facts of this case.
I ¡Accordingly, we find the evidence established that the highway was defective and created an unreasonable risk of harm. This defect was a cause-in-fact of this accident. The law requires DOTD to maintain the road and shoulders of the roads under its control in a reasonably safe condition for vehicular travel. Manasco v. Poplus, 530 So.2d 548 (La.1988). Thus, the portion of the judgment finding that Louisiana Highway 300 was defective and a cause-in-fact of this accident is affirmed in part. The portion of the trial court’s judgment finding the drainage ditch as a defect and a cause-in-fact of this accident is amended to reflect our finding that it was not a defect or a cause-in-fact of the accident.

FAULT OF MS. UPDEGRAFF

DOTD contends that the trial court erred in not assessing any fault to Ms. Updegraff for the accident despite the evidence presented that she failed to maintain control of her vehicle and allowed her vehicle to collide with a tree. We agree.
A motorist’s duty of reasonable care includes the duty to keep the vehicle under control. Russo v. Guillory, 322 So.2d 233 (La.App. 4 Cir.1975), writ denied, 325 So.2d 608 (La.1976). Further, a motorist has a duty to maintain a proper lookout for hazards, which by the use of ordinary care and observation, he should be able to see in time to avoid running into them. Southern Farm Bureau Casualty Ins. Co. v. Gay, 276 So.2d 893 (La.App. 1 Cir.1973).
In the instant case, the medical records from Charity Hospital in New Orleans, Louisiana, revealed that upon admission to the emergency room, Ms. Upde-graffs blood was drawn and tested. Ms. Updegraff tested positive for opiates and marijuana that were in her blood at the time of the accident. Further, she admitted at trial that she had consumed some beer and had taken some prescription | gmedication before the accident. We find that the trial court erred in failing to take this evidence into account when makings its findings of fault.
In addition, we find that the failure of Ms. Updegraff to maintain control of her vehicle was a cause of the accident. The evidence is undisputed that she faded to remove her foot from the accelerator or apply her brakes at any time after her vehicle left the road. Further, a review of *701 the record leads this Court to the conclusion that Ms. Updegraff breached her duty of reasonable care. Furthermore, we find the trial court’s finding that Louisiana Highway 300 was the sole and proximate cause of the accident was manifestly erroneous.
Thus, we reverse the trial court’s finding that the defective highway was the sole and proximate cause of the accident and that driver error was not a contributing factor in causing the accident. This portion of the trial judgment is reversed and amended to reflect our finding that Ms. Updegraff was partially responsible for this accident.

APPORTIONMENT OF FAULT

Having found that the trial court erred in failing to find Ms. Updegraff at fault for this accident, we must allocate fault without deference to the trial court’s allocation of fault. The trier of fact is owed great deference in its allocation of fault. Even if the reviewing court would have decided the case differently had it been the original trier of fact, the judgment of the trial court should be affirmed unless manifestly erroneous or clearly wrong. Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002.
Re-allocation of fault requires consideration of the following factors set forth in Watson v. State Farm Fire and Casualty Ins. Co., 469 So.2d 967, 974 (La.1985):
| inIn assessing the nature of the conduct of the parties, various factors may influence the degree of fault assigned, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. And, of course, as evidenced by concepts such as last clear chance, the relationship between the fauli/negligent conduct and the harm to the plaintiff are considerations in determining the relative fault of the parties.
Ms. Updegraff testified that she veered her vehicle to the right of the highway to give room to a vehicle traveling towards her when she encountered the rut in road, which caused her to lose control of her vehicle. At that point she lost control of the car, drove into the drainage ditch, and traveled along the drainage ditch until she was able to get back on the highway. However, Ms. Updegraff testified that due to the steepness of the drainage ditch she had to steer her vehicle to the left, which caused the vehicle to oversteer. Consequently, she shot across the highway and struck a tree on the opposite side of the highway. Ms. Updegraffs vehicle flipped over and she was pinned upside down.
David Hall, an expert in the field of highway design, maintenance, traffic engineering and accident reconstruction, testified on behalf of DOTD. He testified that Ms. Updegraffs failure to take her foot off the accelerator and to apply the brake for approximately four hundred feet before the collision with the tree was unreasonable. He characterized Ms. Updegraffs inaction as driver error and stated that her error was the primary cause of the accident. Hall concluded that the physical evidence established that Ms. Updegraffs vehicle could have easily been stopped before striking the tree if she had decelerated and applied the brakes.
In Applying the Watson factors and reviewing the entire record, we concluded that the majority of fault is that of DOTD. *702 However, we find that Ms. Updegraff contributed to this accident and the injuries she sustained. Therefore, we assess to Ms. Updegraff 40% of the fault. We reapportion 60% of the fault to DOTD.
DOTD argues that the trial court erred in allowing the unsubstantiated testimony that the tree with which the plaintiff collided was on land owned by the State of Louisiana. DOTD contends the trial court erred by failing to assess fault to the owner of the property on which the tree stood. DOTD argues that the trial court was charged with the duty to apportion fault in accordance with the one responsible for the harm or damage caused.
At trial, DOTD introduced into evidence proof that it never acquired by title a right of way for Louisiana Highway 300 in the area of the accident. DOTD contends that its right of way is a servitude of use inherited from the Parish of St. Bernard (circa 1921) and any structures, obstacles or other defects that are outside that right of way are not the responsibility of DOTD.
DOTD owes a duty to maintain the area off the shoulder of the road, but within the right-of-way, in such a condition that it does not present an unreasonable risk of harm. Oster v. Dept. of Transp. & Development, 582 So.2d 1285 (La.1991). Whether the defect presents an unreasonable risk must be decided on the particular facts and circumstances of each case. Hunter v. Dept. of Transp. and Dev., 620 So.2d 1149 (La.1993); Miller v. State Dept. of Transp. and Development, 95-548 (La.App. 3 Cir. 3/20/96), 679 So.2d 134. Therefore, under the facts of this case, we must ask whether DOTD owes a duty to the motorist when (1) a motorist loses control of a vehicle; (2) a motorist travels off the highway into a drainage ditch; and (3) a motorist attempts to get back onto the [^highway and over steers the vehicle, which causes it to be propelled across to the opposite side of the highway into a tree.
Additionally, when determining whether a condition or defect presented an unreasonable risk of harm, courts balance several factors, including the probability and gravity of the harm presented by the risk against the social utility of the thing involved, the cost to the defendant of avoiding the risk, and the social utility of the plaintiffs conduct at the time of the accident. Nicks v. Teche Elec. Co-op. Inc., 93-1418 (La.App. 3 Cir. 6/1/94), 640 So.2d 723, writ denied, 94-1710 (La.10/7/94), 644 So.2d 640.
In the instant case, we find no defective condition exists as it relates to the tree. The record shows that the cause of Ms. Updegraffs injuries was not DOTD’s failure to remove the tree, but rather her own negligence in failing to act as a reasonable and prudent person in the operation of her vehicle. An individual driver owes a duty to operate his vehicle in a prudent manner, which includes the duty to maintain control of it and to remain within his lane of travel. Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95), 658 So.2d 820, writ denied, 95-1998 (La.12/15/95), 664 So.2d 451; Delphen v. Dept. of Transp. & Dev., 94-1261 (La.App. 4 Cir. 5/24/95), 657 So.2d 328. To be the cause-in-fact of an injury, a defect must be a substantial factor in bringing about the harm. U.S. F. & G. v. Hi-Tower Concrete Pumping, 574 So.2d 424 (La.App. 2d Cir.), writ denied, 578 So.2d 136, 137 (La.1991).
At trial in the instant case, Hubert Graves, testified as a title expert on behalf of DOTD. He testified that he had personally examined the title to the real estate in the vicinity of the accident, including the title to the property on which the tree in question was located. The titles in the public record established that the owner *703 |1sof the land and the tree are Joan Rini Cure and Earl Cure. Mr. Graves also testified that the titles did not show any formal dedication to or acquisition by DOTD of any right-of-way in the area of the accident.
After our review of the record, we find that Joan Rini Cure and Earl Cure were the owners of the property in question on which the tree was located. We find that this tree was neither defective nor was it what caused Ms. Updegraffs accident. The tree did not present an unreasonable risk of harm; neither did DOTD have a duty to maintain the area off the shoulder of the road, nor was there a right-of-way granted in favor of DOTD.
Therefore, the trial court erred in finding DOTD owned the property and tree. Thus, this portion of the trial court’s judgment is reversed. We allocate no fault to the Cures, the owners of the land upon which the tree was located. The Cures were not parties to this lawsuit.

DAMAGES

DOTD argues that the damage award is excessive and that the trial court abused its discretion. We disagree.
The trier of fact has much discretion in the assessment of damages. La.Civ.Code art. 2324.1. Upon appellate review, damage awards will be disturbed only when a clear abuse of discretion has occurred. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). That discretion is vast and should rarely be disturbed unless it is, in either direction, beyond that which a reasonable trier of fact could assess under the particular circumstances. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Schiro v. State ex rel. Dept. of Transp. & Development, 99-2754 (La.App. 4 Cir. 3/21/01), 808 So.2d 500.
The Supreme Court recently reiterated the role of the appellate court in reviewing general damages in Duncan v. Kansas City Southern Railway Co., 2000-0066 pp. 13-14 (La.10/30/00), 773 So.2d 670, 682-83, cert. dismissed, 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001) (citations omitted):
General damages are those, which may not be fixed with pecuniary exactitude; instead, they “involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.” Vast discretion is accorded the trier of fact in fixing general damage awards. This vast discretion is such that an appellate court should rarely disturb an award of general damages. Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. As we explained in Youn:
Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award....
The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. Only after a determination that the trier of fact has abused its “much discretion” is a resort to prior awards appropriate and *704 then only for the purpose of determining the highest or lowest point, which is reasonably within that discretion.
|isln making its factual findings, the trial court gave no specific reasons for the award to Ms. Updegraff. However, we can ascertain from the reasons for judgment that the trial court based its award on plaintiffs injuries sustained as a result of the accident.[1] Nonetheless, considering our disposition as to the reapportionment of fault, we must adjust the trial court’s award. Therefore, based on the evidence and the record, we reduce the trial court’s award by 40% for the fault of Ms. Upde-graff.
DOTD argues that the trial court erred in awarding damages for loss of past wages and future earning capacity. DOTD argues the plaintiffs income tax returns for the years prior to the accident fail to document any actual loss of past and future income, which she claims to have lost as a result of the accident. DOTD contends that the tax returns reflected no independent past income for Ms. Updegraff. Further, it asserts that Ms. Updegraff presented no documented employment history and, at the time of the accident, she was unemployed. An award for loss of earning capacity requires only the presentation of “medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident” at issue. Parker v. Delta Well Surveyors, Inc., 2000-1121, p. 1 (La.App. 4 Cir. 5/2/01), 791 So.2d 717, 722 (Murray, J., concurring in part), citing Aisole v. Dean, 574 So.2d 1248, 1252 (La.1991). This medical evidence may be corroborated and complemented by lay testimony, including that of the plaintiff. Id. at p. 1, 791 So.2d at 722-23, citing Bize v. Boyer, 408 So.2d 1309, 1312 (La.1982); McDonough v. Royal Sonesta, Inc., 626 So.2d 438, 440 (La.App. 4 Cir.1993). Moreover, because public policy favors bringing a case to trial as quickly and efficiently as possible, “[t] he fact that an injured party has not reached maximum recovery and has not been assigned a disability rating does not defeat his claim for loss of future wages.” Id. at p. 1, 791 So.2d at 723, citing Whigham v. Boyd, 97-0693, p. 10 (La.App. 4 Cir. 10/1/97), 700 So.2d 1163, 1168. The trial court’s determination that a loss of future earnings has been proven is a factual finding that cannot be disturbed on appellate review unless it was without foundation and/or was clearly wrong. Id. at pp. 1-2, 791 So.2d at 723, citing Buffinet v. Plaquemines Parish Comm’n Council, 93-0840, pp. 20-21 (La.App. 4 Cir. 7/27/94), 645 So.2d 631, 644.
Loss of past and future income is not merely predicated upon the difference between a plaintiffs actual earnings before and after a disabling injury, but upon the difference between a plaintiffs earning capacity before and after the injury. Brown v. Southern Baptist Hospital, 96-1990, 96-1991, pp. 12-13 (La.App. 4 Cir. 3/11/98), 715 So.2d 423, 431-32, writs denied, 98-0959, 98-0986, 98-1086, 98-1348 (La.5/29/98), 720 So.2d 335, 343, 672. Some of the factors to consider when making an award for loss of earning capacity include: plaintiffs physical condition before the accident, plaintiffs work record before and after the accident, amounts earned in previous years, inflation, and the probability that, except for the injury, the plaintiff would have earned similar wages the rest of his life. Id. at p. 13, 715 So.2d *705 at 432. The jury’s findings as to lost earnings may not be disturbed 117on appeal absent a finding that they were without foundation or were clearly wrong. See Valley v. Specialty Restaurant Corp., 98-0438, pp. 23-24 (La.App. 4 Cir. 1/19/99), 726 So.2d 1028, 1041.
At trial, Ms. Updegraff testified that she had worked as a waitress at Barrister’s for approximately one year before the accident, earning about $400.00 per week. She stated that she was to start a new job at Ikon Solutions working as a secretary on the Monday following the accident, but was unable to take the job as scheduled. After the accident, she worked three days a week at China Ruby packaging to-go orders, but felt “run over” after working, so she eventually stopped.
Dr. Joel Abrahams, Ms. Updegraffs treating psychiatrist, testified that she suffered from Post-Traumatic Stress Syndrome with an associated disorder of major depressive episode. He testified that as a result of the accident, she had developed memory and new-task learning problems, was unable to sleep, avoided driving, experienced problems connecting emotionally with other people, was irritable and angry, exhibited an exaggerated startle response associated with high anxiety, and had suicidal thoughts, sweats, and experience a rapid pulse. Dr. Abrahams further testified that Ms. Updegraffs Post-Traumatic Stress Disorder and depression were being “fed by the chronic pain, as well as the debility of the limitations based on her injuries.... ”
Mr. Bobby Roberts, a vocational rehabilitation expert, testified that Ms. Updegraff was physically and psychologically unable to perform for any sustained |1speriod of time. He stated that she had limited stamina, endurance, and exacerbation of pain, which prevented her from functioning for more than 15 minutes on a continuous basis.
Dr. Raul R. Diaz, an orthopedic surgeon, testified that Ms. Updegraff would be unable to return to her previous employment as a waitress and placed various work limitations on her.
After careful review of the record, we are unable to say that the trial court abused is discretion in its award of the loss of past wages and the loss of future income. Accordingly, for the above reasons, we affirm this portion of the judgment.

CONCLUSION

Based on the foregoing, we reverse the trial court’s finding of no fault on the part of the plaintiff and assess her with 40 percent contributory negligence. We affirm the award of damages, but amend the judgment to reduce all damages by the plaintiffs percentage of fault. In all other respects, the judgment is affirmed.

AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; AFFIRMED AS AMENDED.

McKAY, J. concurs in part and dissents in part with reasons.
MURRAY, J., dissenting with reasons.

. In addition to numerous physical injuries, including a fractured right tibia, fractured talus in the left foot, shoulder cuff tear, requiring surgery, and chronic injuries to the cervical, thorasic and lumbar spine, Ms. Up-degraff is suffering from post traumatic stress disorder, which currently prevents her from returning to gainful employment.