989 So.2d 217 (2008)
Lelia Marie TASSIN, Wife of/and Irving C. Tassin, Jr.
v.
Frank BENDEL, Custom Bus Charters, Inc., Represented by its President, Donna Begovich, Casino Magic and The Insurers of Frank Bendel, Custom Bus Charters, Inc. and Casino Magic.
Bernard Williams, Individually and on Behalf of the Estate of his Mother, Jewel Williams, Deceased; as Well as on Behalf of his Minor Sister, Orrionne Williams
v.
Custom Bus Charters, Inc.; Reliance Insurance Company; Frank Bedell; Casino Magic Corporation; and ABC Insurance Company (as Insurer of Casino Magic).
Anton Zorick
v.
Custom Bus Charters, Inc.; Reliance Insurance Company; Frank Bedell; Casino Magic Corporation; and ABC Insurance Company (as Insurer of Casino Magic).
Robert Torres, Sr., Robert Torres, Jr., Barry Paul Torres and Brian Joseph Torres, individually and on behalf of the Estate of Emily A. Torres
v.
Frank Bedell, Custom Bus Charters, Inc., Represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company; Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc., and Casino Magic Corporation.
Hilda Maria Alexander
v.
Frank Bedell, Custom Bus Charters, Inc., ABC Insurance Company, Casino Magic of Louisiana Corp., and XYZ Insurance Company.
Lucien J. Gauff, Jr., Lucien J. Gauff, III, Chermain Gauff Guerin and Errol M. Gauff, individually and on behalf of The Estate of Shirley Gauff
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc. and Casino Magic Corporation.
Gloria Hotard, Judy Lafontaine and Joseph Oubre, Sr., individually and on behalf of the Estate of Their Mother, Bellie Elfer
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc. and Casino Magic Corporation.
Lois Ponville, Wife of/and Milton Ponville
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc. and Casino Magic Corporation.
Deborah A. Scanlan, individually and on behalf of the Estate of her Mother, Dolly Sposito
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and *218 
The Insurers of Custom Bus Charters, Inc. and Casino Magic Corporation.
Barbara J. Gibson, and her Children, Thomas J. Bryant, Pallie Miller, Eula Ordoyne, William Bryant, Jr. and Brenda Samrow
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc. and Casino Magic Corporation.
Hubert Remondet, Jr., Sandra Remondet and Johnny Remondet, Individually and on behalf of the Estate of their Mother, Mildred Remondet
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and The Insurers of Custom Bus Charters, Inc., and Casino Magic Corporation.
Barbara Gibson
v.
Frank Bendel, Custom Bus Charters, Inc., represented by its President, Donna Begovich, Casino Magic, and The Insurers of Frank Bendel, Custom Bus Charters, Inc. and Casino Magic.
Joseph Labranche, and his Son, Carl Labranche
v.
Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation, and The Insurers of Custom Bus Charters, Inc., and Casino Magic Corporation.
Stacy Tassin
v.
Frank Bedell; Custom Bus Charters, Inc.; Reliance Insurance Company; and Casino Magic Corporation.
Earline Gueret and Joseph Gueret
v.
Frank Bedell; Custom Bus Charters, Inc.; Reliance Insurance Company; and Casino Magic Corporation.
Mary Townson
v.
Frank Bedell; Custom Bus Charters, Inc.; Reliance Insurance Company; and Casino Magic Corporation.
Aline Gueret
v.
Frank Bedell; Custom Bus Charters, Inc.; Reliance Insurance Company; and Casino Magic Corporation.
Kathy Tassin and George Tassin
v.
Frank Bedell; Custom Bus Charters, Inc.; Reliance Insurance Company; and Casino Magic Corporation.
Joan Marie George
v.
Custom Bus Charters, Inc.; Reliance Insurance Company; Frank Bedell; Casino Magic Corporation; and Hartford Insurance Company.
Joan Marie George, individually and on behalf of the Estate of her Mother, Catherine Olivia Humphreys, Deceased
v.
Custom Bus Charters, Inc.; Reliance Insurance *219 Company; Frank Bedell, Jr.; Casino Magic Corporation; and Hartford Insurance Company.
Sandra Agee-Mancuso, Lorraine Agee-Wright, Mandy Agee-Wolf, Jessee Agee and Betty Mae Agee-Dutter, individually and on behalf of the estate of their Mother, Agnes Ivory Rose Agee, Deceased.
v.
Custom Bus Charters, Inc., Reliance Insurance Company, Frank Bedell, Casino Magic Corporation, and The State of Louisiana, through The Department of Transportation.
William Brenner, II, individually and on behalf of the estate of Aurora Rios
v.
Reliance Insurance Company, Custom Bus Charters, Inc., Frank Bedell, Jr., Casino Magic Corporation, ABC Insurance Company, and State of Louisiana, through The Department of Transportation and Development.
Darrell Mathieu, Sr. and Rosana Mathieu Garnett
v.
Frank M. Bedell, Custom Bus Charters, Inc., Reliance Insurance Company, Casino Magic Corporation and ABC Insurance Company.
Theresa Victor, individually and on behalf of the Estate of Timothy Victor
v.
Custom Bus Charters, Inc.; Reliance Insurance Company; Frank Bedell; Casino Magic Corporation; ABC Insurance Company (as Insurer of Casino Magic Corporation); and State of Louisiana, through The Department of Transportation.
Dorothy Borne
v.
Frank Bedell, Custom Bus Charters, Inc., Represented by its President, Donna Begovich, and their Insurance Company, Reliance Insurance Company, Casino Magic Corporation and their Insurers, The Travelers Insurance Company and Hartford Insurance Company.
Lawrence Lee Cook
v.
Frank M. Bedell, Custom Bus Charters, Inc., Reliance Insurance Company, Casino Magic Corporation and ABC Insurance Company.
Josephine Bruce, individually and on behalf of the Estate of her Mother, Rose L. Streva
v.
Custom Bus Charters, Inc., Reliance Insurance Company, Frank Bedell, Casino Magic Corporation and ABC Insurance Company.
Pearl V. Badeaux
v.
Custom Bus Charters, Inc., Frank Bedell, Reliance Insurance Company, Casino Magic Corporation and ABC Insurance Company.
Anna Belle Stein Ockman, et al
v.
Custom Bus Charter, Inc., Reliance Insurance Company, Frank Bedell, and Department of Transportation.
Madeline Deeters Campagna and Alberta Deeters Bonnin
v.
The Succession of Frank Bedell, Custom Bus Charters, Inc., represented by its President, Donna Begovich, and its Insurance Company, Reliance Insurance Company, Casino Magic Corporation, et al. *220 
Don Gauthier, individually and on behalf of the estate of his Mother, Rita Guillard
v.
Frank Bedell, Jr.; Custom Bus Charters, Inc., their Insurance Company, Reliance Insurance Company; Casino Magic Corporation, and its Insurer, Hartford Insurance Company; The State of Louisiana through The Department of Transportation.
Tim Richard and Michael Richard
v.
Custom Bus Charters, Reliance Insurance Company, Casino Magic.
Jessie Agee and Clarence Agee
v.
Reliance Insurance Company, Custom Bus Charter, Inc., and Department of Transportation and Development.
Edward Farrell
v.
Frank Bedell, Custom Bus Charters, Inc., et al.
Deborah Johnston, Linda Johnston Saber, Carl Doisher, Jimmie Doisher and Ennis Doisher, individually and on behalf of the estates of their Respective Parents, Calvin Dwight Johnston and Annie Dell Doisher Johnston
v.
State of Louisiana, through the Department of Transportation and Development.
Lorraine Agee Wright, individually and on behalf of the estate of Her Mother, Agnes Ivory Rose Agee
v.
Reliance Insurance Company, Custom Bus Charters, Inc., Estate of Frank Bedell, Mardi Gras Casino Corporation, Travelers Insurance Company, Hartford Insurance Company, Royal Insurance Company, The State of Louisiana, et al.
Keith J. Cambre
v.
State of Louisiana, through The Department of Transportation and Development.
Gloria Dechara
v.
The State of Louisiana, Dept. of Transportation and Development, Mardi Gras Casino Corp., d/b/a Casino Magic, Hartford Insurance, Royal Insurance Company, and Travelers Insurance Company.
Susan Guidry and Nancy Desselle, individually and on behalf of their Deceased Parents, Arto Marse, Jr., and Juanita Marse
v.
Mrs. Frank Bedell as the Succession Representative of Frank Bedell, Custom Bus Charters, Inc., Reliance Insurance Company, Casino Magic Corporation and ABC Insurance Company.
Nos. 2007-CA-1119, 2007-CA-1120, 2007-CA-1121, 2007-CA-1122, 2007-CA-1123, 2007-CA-1124, 2007-CA-1125, 2007-CA-1126, 2007-CA-1127, 2007-CA-1128, 2007-CA-1129, 2007-CA-1130, 2007-CA 1131, 2007-CA-1132, 2007-CA-1133, 2007-CA-1134, 2007-CA-1135, 2007-CA-1136, 2007-CA-1137, 2007-CA-1138, 2007-CA-1139, 2007-CA-1140, 2007-CA-1141, 2007-CA-1142, 2007-CA-1143, 2007-CA-1144, 2007-CA-1145, 2007-CA-1146, 2007-CA-1147, 2007-CA-1148, 2007-CA-1149, 2007-CA-1150, 2007-CA-1151, 2007-CA-1152, 2007-CA-1153, *221 2007-CA-1154, 2007-CA-1155, 2007-CA-1156, 2007-CA-1498.
Court of Appeal of Louisiana, Fourth Circuit.
July 9, 2008.
*223 Daniel E. Becnel, Jr., Darryl J. Becnel, The Law Office of Daniel E. Becnel, Reserve, LA, Robert M. Becnel, Becnel, Landry & Becnel, LaPlace, LA, for Lelia Marie Tassin, et al.
Terry B. Loup, Morris Bart, P.L.C., New Orleans, LA, for Stacy Tassin, Earline Gueret, Joseph Gueret, Mary Townson, Aline Gueret, Kathy Tassin and George Tassin.
Kenneth C. Fonte, Golden & Fonte, Metairie, LA, for State of Louisiana, through The Department of Transportation and Development.
(Court composed of Judge JAMES F. McKAY, Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD.).
EDWIN A. LOMBARD, Judge.
The State of Louisiana, through the Department of Transportation and Development ("DOTD"), appeals a judgment by the trial court finding it fifty percent (50%) at fault in a one-vehicle bus accident. For the following reasons, we affirm the trial court's judgment.

Relevant Facts
This matter arose out of a catastrophic bus accident that occurred on May 9, 1999, leaving twenty-two of the forty-three passengers dead, and twenty-one injured. The accident occurred along Interstate 610 ("I-610") in New Orleans where it runs through the golf course in City Park. The bus was en route to the Casino Magic Casino in Mississippi and was being operated by Frank Bedell ("Mr. Bedell"). According to eyewitness testimony, for unknown reasons, the bus gradually veered to the right, left the roadway and broke through a guardrail at a speed of 50-60 miles per hour. The bus then went airborne over a ravine and a golf path, and ultimately crashed into the opposite bank of the ravine, crushing the front of the bus upon impact, and causing the center of the bus to crumple.
I-610, at the location where the accident occurred, was originally constructed by DOTD in 1971 and underwent major reconstruction in 1989. During the design phase of the reconstruction project, in 1987 and 1988, DOTD's design plans clearly indicated that the golf cart path was an "area of concern." The design also included a breakaway guardrail system at the location that was intended to redirect a typical 4,500 pound vehicle. The bus involved in this accident weighed an estimated 35,000 pounds.
Plaintiffs brought suit against Mr. Bedell, Custom Bus Charters, Inc., Casino Magic, and their respective insurers, as well as DOTD. Thirty-eight lawsuits were *224 consolidated for purposes of trial. The liability and damages aspects of the case were bifurcated. The liability portion of the case was tried without a jury. At trial, Plaintiffs' expert witnesses testified that the wood strong-post w-beam guardrail was undersized and some of its posts were termite-infested making it totally inadequate to redirect the 35,000-40,000 pound bus. Plaintiffs' experts further testified that federal guidelines at the time of the reconstruction of the highway recommended that states consider installing guardrails capable of redirecting much heavier vehicles, such as the bus in question. Plaintiffs' experts opined that a proper guardrail or barrier could have prevented the accident and the deaths and injuries that occurred.
DOTD's experts testified that federal regulations at the time of the accident did not require that the guardrail be capable of redirecting a 35,000-40,000 pound bus and disputed Plaintiffs' expert's opinion that a more crashworthy guardrail would have redirected the bus and prevented the accident. DOTD's experts testified that the guardrail performed its intended function exactly as it was designed to do  by breaking away on impact. DOTD further alleged that Mr. Bedell was solely liable for the accident since he did nothing to try to regain control of the bus, or to stop or slow down after leaving the travel lanes.
After the bench trial on the issue of liability, the trial court found that DOTD was 50% at fault and that Mr. Bedell was 50% at fault in causing the Plaintiffs' injuries. In its reasons for judgment, the court stated that it was not convinced that the termite damage caused the guardrail to break; however, it did find that the guardrail was inadequate. The court also found that DOTD had actual or constructive notice of the guardrail's inadequacy, in light of the fact that the 1989 Roadside Design Guide clearly advised state agencies to consider the risk of harm if large vehicles penetrated a guardrail such as this one. The court specifically found that DOTD knew or should have recognized the serious risk of harm associated with a guardrail system designed only to redirect cars, and not heavier vehicles, and that DOTD's negligent conduct created an unreasonable risk of harm, not only for motorists on this stretch of the highway, but also for those using the golf cart path below the highway. DOTD subsequently filed a motion for new trial. The trial court denied DOTD's motion for new trial, but granted its motion to amend the judgment to reflect that it is a final judgment. DOTD then filed this timely appeal.

Assignments of Error
On appeal, DOTD argues that the trial court erred in:
(1) finding DOTD at fault and liable for the accident;
(2) finding that DOTD's negligence constituted an unreasonable risk of harm;
(3) finding that DOTD had a duty to provide a roadside barrier capable of redirecting the bus;
(4) relying on subjective factors for optional roadside barrier enhancement;
(5) relying on the unsubstantiated, plainly wrong, and manifestly erroneous opinions of the Plaintiffs' highway engineering expert in finding DOTD liable, negligent, and at fault;
(6) finding that DOTD knew or should have recognized prior to the accident that the guardrail was inadequate and created an unreasonable risk of harm;
(7) by apportioning fault equally between DOTD and the bus driver; and

*225 (8) by not finding the bus driver solely at fault for the accident.

Discussion

Standard of Review
It is well settled that a court of appeal may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Factual issues, including the breach of a duty, cause in fact, scope of protection and allocation of fault are all factual issues subject to the manifest error standard described above. See, e.g., Snearl v. Mercer, 99-1738, p. 11 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 574. Thus, if the trial court's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though it is convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Rosell, at 844.

Liability
Plaintiffs have alleged that DOTD is liable under theories of strict liability and negligence for defective design, condition, and maintenance of the guardrail. In determining whether liability exists under a negligence theory, courts employ a duty/risk analysis in which the following must be considered: (1) whether the conduct of which the plaintiff complains was a cause-in-fact of the harm; (2) whether there was a duty on the part of the defendant which was imposed to protect against the risk involved; (3) whether there was a breach of that duty; and (4) damages. Blair v. Tynes, 92-3294 (La.1993), 621 So.2d 591, 595. Further, under a strict liability theory, pursuant to Louisiana Revised Statute § 9:2800, and as applied to government defendants like DOTD, Plaintiffs must also prove that DOTD had actual or constructive notice of the vice or defect which caused the damage prior to the occurrence, that DOTD had a reasonable opportunity to remedy the defect, and that it failed to do so. La.Rev.Stat. § 9:2800.
Louisiana law imposes a duty on DOTD to design, construct, and maintain Louisiana's highways. To further this end, Louisiana Revised Statute § 48:35(A) requires DOTD to "adopt minimum safety standards with respect to highway and bridge design, construction, and maintenance." The statute further mandates that these standards "correlate with and, so far as possible, conform to the system then current, as approved by the American Association of State Highway and Transportation Officials [AASHTO]." La.Rev.Stat. § 48:35(A). These design standards are known as the Roadside Design Guide.
DOTD has a legal duty to maintain the highways in a reasonably safe condition. Sinitiere v. Lavergne, 391 So.2d 821, 824 (La.1980). This duty "extends to the protection of those people who may be foreseeably placed in danger by an unreasonably dangerous condition." Id. at 825. It extends not only to prudent and attentive drivers, but also to motorists who are slightly exceeding the speed limit or momentarily inattentive. Trahan v. State, Dep't of Transp. & Dev., 536 So.2d 1269, 1273 (La.App. 3 Cir.1988). DOTD must also maintain the shoulders and the area off the shoulders, within its right-of-way, in such a condition that they do not present an unreasonable risk of harm to motorists using the adjacent roadway and to others, such as pedestrians, who are using the area in a reasonably prudent manner. Netecke v. State ex. rel. Dep't. of Transp. & Dev., 98-1182, 98-1197, p. 8 (La.10/19/99), 747 So.2d 489, 495. DOTD's duty to maintain safe shoulders encompasses the foreseeable risk that for any number of reasons a motorist might find *226 himself on, or partially on, the shoulder. Id.
DOTD cannot knowingly allow a condition to exist that is a hazard to a reasonably prudent driver. Rosen v. State, Dep't of Transp. & Dev, 01-0499, p. 11 (La.App. 4 Cir. 1/30/02), 809 So.2d 498, 507. In such a case, DOTD must take reasonable measures to eliminate or reduce the risks associated with the dangerous condition or may warn the public of the danger, risk, or hazard involved. Id. Clearly, then, under the foregoing Louisiana law, DOTD had a statutory duty to the Plaintiffs to design, construct and maintain, in a reasonably safe condition, the area along I-610 where the accident occurred.
Whether DOTD breached its duty, that is, whether the roadway at the scene of this accident was an unreasonably dangerous condition will depend on the particular facts and circumstances of this case. See, Hunter v. Dep't. Transp. & Dev., 93-0235 (La.7/01/93), 620 So.2d 1149, 1151; see also, Netecke, 98-1182, 98-1197 at pp. 7-9; 747 So.2d at 494-95. However, DOTD cannot escape liability by simply showing that highway met the existing standards. Rosen, 01-0499, p. 11, 809 So.2d at 507, citing, Aucoin v. State, Dep't of Transp. & Dev, 97-1938, 97-1967, pp. 6-8 (La.4/24/98), 712 So.2d 62, 66-67. As the trial court correctly pointed out, design standards both at the time of original construction and at the time of the accident may be relevant factors in determining whether a given stretch of roadway presents an unreasonable risk of harm, but are not determinative of the issue. Dill v. State, Dep't of Transp. & Dev, 545 So.2d 994, 996 (La.1989). Although DOTD does not have a duty to bring old highways up to modern AASHTO standards absent a major reconstruction of that highway (See Cormier v. Comeaux, 98-2378 p. 9, 748 So.2d 1123, 1129), whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous. Aucoin, 97-1938, 97-1967 at 7, 712 So.2d at 66.
At trial, there was no dispute that DOTD owed a duty to maintain the safety of I-610. There was also no dispute that the area where the golf cart path ran directly under the highway created an "area of concern" for DOTD during the design stage of the reconstruction of the interstate system. In fact, DOTD's expert, Mr. Robertson, admitted that the golf cart path was a nontransversable hazard, but was kept in its location due to a perceived need for the golfers to travel from the clubhouse to the golf course.
However, on the issue of whether DOTD breached its duty and whether I-610, at the precise location where the accident occurred, was unreasonably dangerous, the experts offered conflicting testimony. Plaintiffs' expert, Arthur Barrow, testified that the guardrail at issue was inadequate and not appropriate for an area of concern such as this one. Mr. Barrow opined that, in light of the fact that this area was an "area of concern," the state should have either installed a stronger barrier or made adjustments to the golf cart path to alleviate the danger of penetration of the barrier by a heavy vehicle. Plaintiffs' other two experts, Drs. Ric Robinette and Robert Erlich, testified that the intended purpose of the guardrail was to protect vehicles from going off the highway and onto the golf cart path. Dr. Robinette further testified that had the guardrail performed as it was intended to, the bus would not have left the roadway and crashed into the ravine that contained the golf path; rather, the bus would have either been redirected by the barrier and the accident prevented or, at worst, the bus would have spun *227 around and "flopped over" resulting in a much less catastrophic accident.
DOTD's experts countered the Plaintiffs' evidence with testimony that the bus hit the very end of the guardrail, that the guardrail performed exactly as it should have, that the crashworthiness of the guardrail complied with federal guidelines, and that the driver was solely at fault for the accident since he failed to maintain the vehicle.
Where the testimony of expert witnesses differs, the trier of fact has the responsibility to determine which evidence is the most credible. Schiro v. State ex rel. Dep't. of Transp. & Development, 99-2754, p. 12 (La.App. 4 Cir. 3/21/01), 808 So.2d 500, 508, citing, Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1111 (La.1990). Credibility determinations are subject to the strictest deference, and the manifest error standard demands great deference to the trier of fact's findings. Id., citing, Theriot v. Lasseigne, 93-2661 (La.7/5/94), 640 So.2d 1305, 1313. Where conflicting evidence is present, the trial court's reasonable evaluations of credibility and inferences of fact should not be disturbed on appeal unless clearly wrong. Rosen v. State, Dep't. Transp. & Dev., 01-0499, p. 13 (La.App. 4 Cir. 1/30/02), 809 So.2d 498, 509.
The trial court heard and weighed all of the expert testimony and concluded that DOTD was liable to the Plaintiffs. The trial court found the testimony of Plaintiffs' experts to be more credible and, in fact, discredited much of DOTD's experts' testimony because it was "not supported by sound methodology and is outweighed by other factual and expert testimony." In its reasons for judgment, the trial court found that the guardrail, at this area of concern, was unreasonably dangerous, inadequate, and played a physical role in causing the accident. The court also found that, because the 1988 Roadside Guide listed criteria for subjective consideration that recommended a stronger guardrail for areas with nontransversable hazards, and the 1989 Guide discussed the fact that some state agencies had developed and used barrier systems capable of redirecting vehicles as heavy as 80,000 pounds, DOTD knew or should have recognized the risk of serious harm associated with a guardrail system designed only to redirect vehicles no heavier than a typical car along I-610 where the accident occurred.
After reviewing the record, we find that the evidence supports a finding that DOTD had a duty to the passengers on the bus, that it breached that duty by failing to provide an adequate guardrail, that the risk that a bus would veer off the road and collide with the guardrail was within the scope of the protection afforded by the duty, and that DOTD's breach of the duty was a cause-in-fact of the accident. Clearly, DOTD's conduct in failing to design, install, and, possibly, properly maintain, an adequate guardrail at this location was a factor in causing the injuries and deaths of the bus passengers. As the record discloses a reasonable factual basis for the trial court's findings regarding liability, we cannot say that the trial court was clearly wrong in holding that DOTD is liable for the accident.

Allocation of Fault
Having upheld the trial court's findings of liability, we next address whether the trial court was clearly wrong in allocating fault equally between the parties.
In Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La. 1985), the Louisiana Supreme Court set forth five factors to be considered in apportioning fault: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger; (2) the extent of *228 the risk created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actor, whether superior or inferior; and (5) any extenuating circumstances that might require the actor to proceed without proper care. Watson, at 974. Furthermore, the relationship between the fault/negligent conduct and the harm to the plaintiff(s) are considerations in determining the relative fault of the parties. Snearl v. Mercer, 99-1738, p. 26 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, 583, citing Mart v. Hill, 505 So.2d 1120, 1123 (La.1987).
DOTD argues that the trial court erred in allocating 50% fault to the driver of the bus and 50% to the DOTD. DOTD argues that it was not at fault in causing the accident since the guardrail was adequate and appropriate for the area in which the accident occurred. The DOTD claims that the trial court should have found Mr. Bedell solely at fault for the accident, since he veered off the road, onto the shoulder, and rather than applying his brakes, sped down the shoulder, through the guardrail and over the ravine. It argues that Mr. Bedell did nothing to try to regain control of the bus, or to stop or slow down after leaving the travel lanes, and that his failure to do so was the sole cause-in-fact of the accident.
Conversely, Plaintiffs argue that the design of the entire stretch of I-610 where the accident occurred was inherently dangerous, and that trial court's allocation of fault is both correct and in line with similar cases involving one-vehicle accidents. We have thoroughly reviewed the case law on this issue and cannot say that the trial court's allocation of 50% fault to DOTD and 50% to Mr. Bedell was unreasonable under the facts of this case.
In Campbell v. Louisiana Dept. of Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, for example, a single-car accident occurred when the driver fell asleep at the wheel and his automobile struck a bridge abutment, resulting in the death of a passenger and injuries to the driver and another passenger. Following a bench trial, the trial court found the driver 25% at fault and the DOTD 75% at fault for causing the accident and resulting injuries. On appeal, this court amended the judgment to reduce the liability of the DOTD from 75% to 10%. The Louisiana Supreme Court reversed and reinstated the trial court judgment. In doing so, the court analyzed the fault of the parties in causing the harm to the plaintiffs, finding it clear that the greater degree of fault lied with the DOTD under the circumstances of that case. The court stated:
[E]xcept to the extent that the driver's negligence set the accident in motion, the driver had no control over the resulting harm caused by the impact of the vehicle with the concrete bridge abutment. The evidence presented by experts on both sides was that the purpose of a guardrail is to prevent or at least reduce the injuries and subsequent damage by redirecting a vehicle back onto the highway and to prevent impact with the concrete bridge abutment ... To put it another way, [the driver's] negligence set the course for an accident to happen, but the harm or injuries to the guest passengers in [the driver's] vehicle were a direct result of the impact with the concrete bridge abutment. We agree with the trial judge's finding that the DOTD's fault is more substantial than the fault of [the driver] in causing the harm sustained.
Id. at 902-903.
Similarly, in Petre v. State ex. rel. Dep't. of Transp. & Dev., 01-0876 (La.4/3/02), 817 So.2d 1107, the Louisiana Supreme Court upheld the trial court's judgment allocating fault equally between an intoxicated *229 driver and the DOTD. In Petre, the driver momentarily took her eyes off the road and the wheels of her car left the paved surface. She then attempted to turn the wheels to reenter the highway, but failed to apply the brakes and traveled along a ditch until she hit a culvert. She collided with a driveway which ran perpendicular to the culvert and her car became airborne, bounced off two trees, overturned, and finally came to rest on a stump. The Court held that although the driver's intoxication or inadvertence caused her to drive off the road, expert testimony indicated that it was the unreasonably dangerous shoulder and slope of the adjacent ditch that prevented her from reentering the road and which caused the vehicle to become airborne and overturn. Therefore, the Court found that the trial court's allocation of 50% of the fault to DOTD was not manifestly erroneous and upheld the trial court's judgment.
Likewise, in Updegraff v. State, Dep't. of Transp. & Dev., 01-1048 (La.App. 4 Cir. 10/2/02), 828 So.2d 693, this court reallocated the percentages of fault for the accident in the amount of 60% to DOTD, and 40% to the driver, who veered off the highway, hit a rut, drove into a drainage ditch, and while attempting to reenter the highway, overcompensated, and ultimately shot across the highway and collided with a tree. The evidence showed that the driver, who admitted to consuming alcohol, marijuana, and prescription opiates on the day of the accident, had kept her foot on the accelerator and had failed to apply the brakes at any time after her vehicle left the road. Nevertheless, after reviewing the entire record, we found that the rut in the highway presented an unreasonable risk of harm, and, as a result, the majority of fault was with DOTD, even though the driver's actions contributed to the accident and her injuries.
Finally, in Snear v. Mercer, supra, 99-1738 (La.App. 1 Cir. 2/16/01), 780 So.2d 563, the First Circuit Court of Appeal reallocated the fault of the driver of the vehicle to 35% and to DOTD to 65% in a one-car accident in which the inattentive driver lost control of his truck, which vaulted over a bridge railing and fell thirty feet, resulting in the death of one of his passengers and causing severe injuries to the other passenger. In that case, the court found that the driver's inattentiveness clearly set the accident in motion; but it also found that the unreasonably dangerous bridge railing failed in its intended purpose of containing vehicles on the roadway and was a substantial cause of the plaintiffs' injuries.
Like the actions of the drivers in the aforementioned cases, Mr. Bedell's negligence clearly set the accident in motion. Mr. Bedell, like all drivers, had a duty to operate the bus in a prudent manner, which included the duty to maintain control of the vehicle and remain within his lane of travel. Updegraff, 828 So.2d at 702. He breached this duty by running off the road and failing to maintain control of the bus. Even so, Mr. Bedell's failure to maintain control of the bus did not relieve DOTD of its duty to keep highways reasonably safe. DOTD was aware that this stretch of I-610 and its proximity to the golf cart path was an "area of concern." Its own expert testified that it was foreseeable that vehicles would run off the road at that location and that the purpose of the guardrail was to redirect vehicles and prevent impact with obstacles. Moreover, the 1989 Roadside Design Guide suggested that states consider installing guardrails capable of redirecting much heavier vehicles, like the bus involved in this accident. Despite being armed with this information, DOTD chose to install a guardrail capable of redirecting only a normal sized automobile, even though it was *230 foreseeable that heavier vehicles, such as busses and tractor trailers, would run off the road and through the guardrail at this location.
At the appeal hearing, DOTD correctly pointed out that "but for" Mr. Bedell's conduct in losing control of the bus, this accident would not have happened. Although this may be true, our concern in determining whether the trial court's apportionment of fault was reasonable is not which party's conduct initially caused the accident, but how much each party's conduct resulted in the Plaintiffs' ultimate injuries. We find that the negligence of Mr. Bedell in losing control of the bus combined with DOTD's failure to design, install, and properly maintain a safety system capable of redirecting the bus, equally caused the harm to the passengers on the bus. Except to the extent that Mr. Bedell's negligence set the accident in motion, he had no control over the resulting harm caused by the impact of the bus with the embankment, which crushed the bus like an accordion, resulting in the deaths and serious injuries of the bus passengers. Had the design of the entire area and, specifically, the guardrail itself, been adequate for its intended purpose of redirecting vehicles that veer of the highway, the Plaintiffs' injuries could have been avoided or may have been much less severe.
"In apportioning fault the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed." Campbell, 94-1052, p. 7 (La.1/17/95), 648 So.2d 898, 902 (citing Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985)). The trier of fact is owed great deference in its allocation of fault. Schiro, 99-2754, p. 15 (La.App. 4 Cir. 3/21/01), 808 So.2d 500, 510. "Even if the reviewing court would have decided the case differently had it been the original trier of fact, the trial court's judgment should be affirmed unless manifestly erroneous or clearly wrong." Id., citing Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002.
Here, the Plaintiffs presented ample evidence, including the testimony of several expert witnesses, to support their claim that DOTD should bear at least half of the fault for the accident that resulted in the injuries and deaths of the forty-three bus passengers. We find that the trial court's fault allocation took into account the nature of Mr. Bedell's conduct as well as that of DOTD, and was consistent with similar Louisiana cases regarding fault allocation. Therefore, the trial court's equal allocation of fault is supported by the law and evidence, and thus, is not manifestly erroneous or clearly wrong.

Conclusion
We have carefully reviewed the record and have found no error in the trial court's finding that the conduct of both the State and Mr. Bedell were at fault in causing this catastrophic accident. Likewise, our review of the record reveals no error in the trial court's allocation of fault between the State and Mr. Bedell. The judgment of the trial court on the liability portion of the bifurcated trial is affirmed. The State of Louisiana, through the Department of Transportation and Development, is cast with all costs of this appeal. The case is remanded to the district court for trial of the second of the bifurcated phases-the damages suffered by the Plaintiffs.
AFFIRMED.
TOBIAS, J., dissents in part and assigns reasons.
GORBATY, J., dissents with reasons.
*231 TOBIAS, J., dissents in part and assigns reasons.
I respectfully dissent from the majority's affirmation of the trial court's assessment of fifty percent of the fault of the subject accident to the State of Louisiana, Department of Transportation and Development.
I agree with the majority that the construction of the barriers combined with the ravine created an unreasonable risk of harm. However, in 1989 at the time of the reconstruction of the highway, federal guidelines[1] recommended that states "consider" installing guardrails capable of redirecting heavier vehicles. The guidelines did not require the installation of guardrails that would redirect vehicles heavier than an ordinary automobile.
The majority's reliance on Campbell v. Louisiana Transp. & Dev., 94-1052 (La.1/17/95), 648 So.2d 898, is misplaced. I find that a substantial difference exists between a rigid unforgiving concrete barrier at a bridge abutment, which does not give upon being struck (such as that which Campbell collided with), and wooden barricades designed to redirect vehicles back onto a highway.[2]
I find that state bears some responsibility based upon the design of the ravine.[3] That ravine could have been designed so that a vehicle leaving the highway would roll up the ravine rather than coming to an abrupt stop.
In view of the totality of the facts, especially Mr. Bedell's health and medications, I find that the highest percentage of fault that a reasonable trier of fact could assign to the state for the subject accident is ten percent. The assessment of fault to the state of fifty percent is manifestly erroneous and must be reversed as a matter of law.
Further, this case illustrates why the issue of liability should not be bifurcated from the question of damages. Under La. C.C. arts. 2315 and 2323, the trier of fact is obligated to determine which damages were caused by which person. To say that all plaintiffs sustained injuries due to the 50% fault of the state is premature. That is, depending upon where each decedent or injured party sat in the bus, whether the passenger wore a seat belt, and whether injuries were due to being thrown through the windshield, hitting the back of a passenger seat, or from the bus's rolling over, differs from injured party to injured party. Without knowing each injured party's injuries, it appears foolhardy to say that conclusively 50% was due to the fault of the state.[4]
In light of the foregoing, I find the majority's assessment of the costs of the appeal to the state erroneous. Costs for the appeal should be borne by the plaintiffs.
GORBATY, J., dissents, with reasons.
Because I find that the bus driver's negligence was the sole cause of the accident in question, I respectfully dissent.
*232 The majority states that the DOTD had a statutory duty to design, construct and maintain, in a reasonably safe condition, the area along the I-610 where the accident occurred. I agree. I disagree, however, that the DOTD breached that duty by failing to install a stronger barrier to prevent penetration by a vehicle heavier than 4500 pounds. Louisiana law requires the DOTD to "adopt minimum safety standards with respect to highway and bridge design, construction and maintenance." La. R.S. 48:35 A. The record supports that these minimum standards were met.
To recover damages, plaintiffs must prove that 1) the DOTD had custody and control of the thing causing plaintiffs' injuries, 2) the thing was defective because it had a condition which created an unreasonable risk of harm, 3) the DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and 4) the defect was a cause-in-fact of plaintiffs injuries. Cormier v. Comeaux, 98-2378, pp. 5-6 (La.7/7/99), 748 So.2d 1123, 1127; Brown v. Louisiana Indem. Co., 97-1344, p. 3 (La.3/4/98), 707 So.2d 1240, 1242. Each element of the analysis must be proved.
Plaintiffs' experts, upon whose testimony the trial court relied, testified that the federal guidelines recommended that states consider installing guardrails sufficiently strong to withstand impact from much heavier vehicles, such as the bus involved in this accident. These guidelines are purely aspirational, and do not require compliance. Thus, by complying with the AASHTO standards, the DOTD fulfilled its duty to design, construct and maintain that area of the highway, and specifically, the guardrail, in a reasonably safe condition.
Plaintiffs' experts also testified that had a sturdier guardrail been in place the accident may have been prevented, or, at the very least, it would not have been as severe. Clearly, the guardrail would not have prevented this accident. Indeed, Drs. Robinette and Erlich testified that a stronger guardrail would have prevented the bus from entering the ravine, but would not have prevented the accident. Rather, they testified that instead of entering the ravine the bus would have either careened back into the heavily traveled lanes of traffic, or spun around and "flopped over." Thus, in my opinion, whether or not a stronger guardrail would have lessened the severity of the accident is sheer speculation. Speculation should not enter into the analysis of whether a party is at fault.
The trial court heard testimony that, for unknown reasons, the bus gradually veered to the right, left the roadway, and crashed through the guardrail at a speed of 50-60 miles per hour. It found the bus driver to be 50% liable for the accident. Although the trial court did not find that alleged termite damage to the guardrail caused it to be defective, it did find that the guardrail was inadequate. As stated herein, this finding was based solely on speculations presented by plaintiffs' experts, and totally ignored the record evidence that the DOTD was in compliance with all state and federal regulations.
I do not find that plaintiffs' have proved any of the elements necessary to hold the DOTD liable for their injuries. The guardrail was in the custody of the DOTD, however, it was not proven that the guardrail caused the damages. There was no proof that the guardrail was defective or presented an unreasonable risk of harm because the guardrail was in compliance with the relevant regulations. The DOTD did not have notice of a defect, because as stated above, there was no defect. Lastly, it was not proven that the guardrail caused the injuries. The record contains only *233 speculative testimony about how a better guardrail could have changed the result of the bus driver losing control of the bus. Accordingly, it is my opinion that but for the negligence of the bus driver, this accident would not have occurred. To hold the DOTD 50% liable for this accident, knowing that the DOTD was in compliance with at least the minimum required standards, is manifestly erroneous.
NOTES
[1] 1989 Roadside Design Guide.
[2] Campbell is thus substantially similar to this court's decision in Rosen v. State, Dep't of Transp. & Dev., 01-0499 (La.App. 4 Cir. 1/30/02), 809 So.2d 498.
[3] The ravine was designed such that if struck by an errant vehicle that has become totally or partially airborne after hitting one or more of the barricades, the errant vehicle would come to a sudden, abrupt, and immediate stop upon hitting the embankment
[4] In this view, it would seem appropriate to dismiss the present appeal without prejudice and reserve to a later date a determination of each party's injuries and damages and the cause thereof.