JAMES F. MCKAY III, CHIEF JUDGE
In this appeal, involving alleged damage to oyster leases, the defendant, Cox Operating, LLC, appeals the trial court's judgment finding it liable for damages to oyster leases held by the plaintiffs, Pero and Mary Ann Cibilic, and awarding the plaintiffs' damages. For the reasons that follow, we affirm the trial court's judgment as amended.
FACTS AND PROCEDURAL HISTORY
Pero and Mary Ann Cibilic hold oyster leases located in Lake Eloi in St. Bernard Parish. Specifically, Mr. Cibilic owns oyster lease 33311-08 and Mrs. Cibilic owns oyster lease 33935-09. These leases are located in about six to ten feet of water and their bottoms consist mainly of productive oyster reef.
In 2011, Mr. and Mrs. Cibilic made a significant investment to purchase, transport, and spread hundreds of tons of cultch (limestone or concrete forming the substrate for oyster cultivation) onto their leases. Mr. and Mrs. Cibilic made this investment because of the scarcity of oysters after the BP oil spill and the increase of oyster prices by double or even triple of what they had been in the past. By early 2012, Mr. and Mrs. Cibilic had a healthy crop of oysters on their leases.
In May of 2012, Cox began a project to re-enter one of its old wells located adjacent to the Cibilic's oyster leases. This well, known as Cox well number 13, had been plugged and abandoned. The well was located in nine to ten feet of water with a bottom of fine sediment. Re-entry required Cox to tow a 205-by-50-foot barge, topped by a 142-foot-tall drilling derrick, to the well site using several tugboats. The rig remained at the well site until June 27, 2012, and there was daily vessel traffic to the rig. Cox gave no advance notice of the re-entry project to any oyster leaseholders in the vicinity of the project.
In order to access the well, vessels had to approach the well from the south and cross directly over Mrs. Cibilic's lease. The route required a sharp right-handed turn, just east of Mr. Cibilic's lease. The turn required vessels to power down and back up, with their propellers (props) directing prop wash towards Mr. Cibilic lease and causing sedimentation on the leases, damaging the oyster beds.
Mr. and Mrs. Cibilic filed suit against Cox, claiming that Cox damaged their oyster *327 leases and oysters while Cox was working on the aforementioned re-entry project on well number 13. At trial, Mr. and Mrs. Cibilic presented the witness testimony of Mr. Cibilic, Nikola Vekic (a neighboring oyster leaseholder), and Farrell Schexnayder (a Cox tugboat contractor). They all testified that they observed Cox vessels engaging in propeller washing which displaced the sediment on the water bottoms. The plaintiffs' expert witness, oyster biologist, Dr. Ed Cake, also testified regarding damages and causation.
Cox did not present any witnesses who were present in the field during the project. Its witnesses consisted of its president and chief operating officer Rodney Dykes, its permitting agent Kasey Hebert, and Jakov Jurisic (whose wife owns the oyster lease where Cox's well is located). The defendant also called Gabe Johnson, an oyster biologist, as an expert witness.
Following a three-day bench trial, the trial court issued a judgment in favor of Mr. and Mrs. Cibilic along with reasons for judgment. The trial court held that Cox negligently damaged the plaintiffs' leases and buried their oysters. The court entered judgment in favor of Mr. and Mrs. Cibilic for $5,140,759.70 plus interest and costs. It is from this judgment that Cox now appeals.
DISCUSSION
On appeal, Cox raises several assignments of error, which can be summarized as follows: 1) whether plaintiffs met the preponderance burden of proof as to causation; 2) whether the district court applied the correct law to plaintiffs' claims; 3) whether Cox's alleged lack of notice/lack of precautions was a breach of duty under negligence principles based on the objective evidence; 4) whether the district court abused its discretion in refusing to exclude Dr. Cake as an expert; and 5) whether the district court abused its discretion as to quantum.
"A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong." Allerton v. Broussard, 2010-2071, p. 3 (La. 12/10/10), 50 So.3d 145, 146-47. "[I]n order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." Id.
In the instant case, the trial court found that "Cox and the support vessels it contracted disturbed the sediments at the bottom of Lake Eloi or along the access route as described by several eyewitnesses." This finding is supported by the testimony of: Mr. Cibilic, who observed Cox vessels prop washing and stirring sediments near his lease; Mr. Vekic, who also observed Cox vessels prop washing near his own lease; Mr. Schexnayder, who testified that he regularly prop washed to navigate Cox's access route, and he also saw other tugs causing sedimentation; and Mr. and Mrs. Jurisic, who own the lease where the well is located and who also sued Cox for damage caused by wheel washing during the project. Sonar data from Cox's expert also showed that Cox's vessels scarred the bottom. The trial court noted that Cox "provided no eyewitnesses to contradict the testimony of eyewitnesses called by plaintiffs and this Court finds these witnesses to be very credible, especially in light of their varied backgrounds and personal experiences." Thus, it appears to this Court that the trial court's finding that Cox disturbed/damaged the water bottoms on the plaintiffs' leases was reasonable.
*328 The trial court was also presented with evidence of the widespread oyster mortality on the leases of Mr. and Mrs. Cibilic following the project. Dr. Cake's sampling found high mortality after the project, and his methods and findings were not disputed by Cox's expert. In fact, Cox's expert also found "notably high" (62%) mortality in the area three months after the project. Cox's expert also conceded that his "qualitative assessment" found 1-4 inches of soft sediment on top of oyster reefs. Additionally, OLDEB[1] -approved poling data found 49.4 acres of buried oyster reef on the leases. Evidence was also presented which negated that any of the damage could have been caused by Hurricane Issac or some other cause.
"Where the testimony of experts differs, the trier of fact has great, even vast, discretion in determining the credibility of the evidence." Duvio v. Specialty Pools Co., L.L.C., 2015-0423, p. 25 (La.App. 4 Cir. 6/16/16), 216 So.3d 999, 1016. Courts routinely reject attempts to nit-pick at the complexities of the data and inferences supporting an expert's opinions. Whether such granular issues render an expert's testimony not credible is a judgment for the trial court. See Kanda Constr., LLC v. Gebre, 2015-1307, p. 5-6 (La.App. 4 Cir. 7/20/16), 197 So.3d 791, 794-95. In the instant case, the evidence is undisputed that Cox vessels disrupted bottom sediments, and sedimentation caused significant damage to the Cibilic leases. Accordingly, we find no error in the trial court's determination regarding causation.
Cox suggests that the trial court applied strict liability. However, the trial court found Cox negligent and explained that holding in detail. Identifying the applicable law ( La. C.C. arts. 667 and 2315 ) and noting Cox's contention that maritime law applies, the court observed that the "principles of negligence" govern. Regarding its stance, the trial court made a number of findings: Cox knew or should have known that its project would cause damage that could have been prevented, and Cox did not exercise reasonable care to prevent such damage; Cox did not use reasonable prudence in order to minimize damage to the plaintiffs' oyster leases and failed to exercise reasonable care in conducting well Number 13 re-entry activities; and Cox failed to provide adequate instruction to its workers and contractors on how to avoid damages to oyster reefs and the displacement of sediment on the water bottoms. The court ultimately found that Cox did not take reasonable, adequate steps to avoid damages to the plaintiffs' leases. Based on the record before this Court and the trial court's findings, it is clear that the trial court properly applied a negligence standard in this case.
The trial court found that Cox negligently failed to give adequate notice of the project. The court held that under general negligence principles Cox had a duty to give Mr. and Mrs. Cibilic adequate notice because the project risked damaging their property. The trial court further found that Cox's failure to warn illustrated a pattern of "utter disregard for the plaintiffs' property rights."
Cox contends that the trial court "ignore[d] objective facts" to find that Cox failed to give adequate notice. The "objective fact" that Cox refers to is its assertion that Mr. Dykes notified Mr. Cibilic by telephone. Even if the trial court had believed this assertion, it would still only be five days prior to the start of the operation, which would be insufficient notice as determined by this Court. See generally *329 Voisin v. Berry Bros., Inc, 387 So.2d 633 (La.App. 1st Cir. 1980). "Sufficient notice" must allow "sufficient time in which the oysterman would take the steps necessary to preserve his harvests." Id. at 636.
Cox also calls into question the trial court's decision to qualify Dr. Ed Cake as an expert. The trial court has "wide discretion" to admit expert testimony, and "its rulings should not be reversed in the absence of clear error." Holzenthal v.Sewerage & Water Bd. of New Orleans, 2006-0796, p. 29 (La.App. 4 Cir. 1/10/07), 950 So.2d 55, 73-74. "This discretion is even greater in a bench trial." Id., 2006-0796, p. 29, 950 So.2d at 74. This also applies to the trial court's Daubert analysis because "to do otherwise would hamstring the trial court's discretionary authority." Johnson v. Melton, 2003-1132 (La.App. 4 Cir. 2/4/04), 867 So.2d 804, 808.
Dr. Cake has been an OLDEB-certified biologist since the beginning of OLDEB and co-wrote the OLDEB methodologies for evaluating oyster damages. He has performed hundreds of oyster lease damage assessments, published dozens of scientific articles on oyster biology, taught university courses in marine biology, and been accepted as an expert witness in sixteen jurisdictions across the Gulf States, including St. Bernard Parish.
In the instant case, Dr. Cake's report and his testimony at trial explained the multiple bases and sources for his opinions on causation and damages. He also explained why he eliminated other causes.
Cox argues that Dr. Cake's preliminary assessment was not fully compliant with OLDEB-but it ignores that Dr. Cake's final survey and report were OLDEB-compliant. Dr. Cake's initial dredge samples were only to assess whether any damage existed. Finding damage, Dr. Cake then performed a full OLDEB analysis, taking numerous square meter samples and conducting a poling survey of the bottom substrate. This analysis, reflected in Dr. Cake's final expert report and trial testimony, revealed the full extent of the damages.
Based on the record before this Court, it does not appear that it was clear error for the trial court to admit the expert testimony of Dr. Cake. However, the trier of fact was to apply its discretion to Dr. Cake's testimony and credit his testimony only in so far as it agreed with reliable scientific methods or was helpful to the court (not mere speculation).
Cox's final assignment of error involves the trial court's award of quantum damages. "The correct standard for appellate review of a damage award is clear abuse of discretion." Thoulion v. Jeanfreau, 2000-1045, p. 9 (La.App. 4 Cir. 6/20/01), 794 So.2d 936, 947. "The standard of review for damage awards requires a showing that the trier of fact abused its great discretion accorded in awarding damages." Parker v. Delta Well Surveyors, Inc., 2000-1121, p. 3 (La.App. 4 Cir. 5/2/01), 791 So.2d 717, 719 (citations omitted). To constitute an abuse of discretion, an award "must be so high or so low in proportion to the injury that it shocks the conscience." Id., 2000-1121, p. 4, 791 So.2d at 720.
"In deciding whether a trial court award was excessive, courts must first consider the individual circumstances of the subject case to determine whether the trial court abused its much discretion in setting the award. Only after determining that the award in the subject case was improper may a court consider awards in similar cases." Garcia v. Louisiana Dept. of Transp. & Dev., 2000-0930, p. 9 (La.App. 4 Cir. 5/16/01), 787 So.2d 1142, 1148.
In the instant case, the trial court awarded Mr. and Mrs. Cibilic $5,140,759.00 in damages. Based on Dr. Cake's trial *330 quantum this amount would compensate Mr. and Mrs. Cibilic for three years of damage for their oyster leases damaged by Cox. Such an award shocks the conscience. The amount awarded by the trial court exceeded the total amount of all of the plaintiffs' oyster leases had earned for a decade. The most money that Mr. and Mrs. Cibilic had ever made in one year was $147,514 in 2008. Even Dr. Cake admitted the patent excessiveness of his own numbers. The trial court attempted to justify its award of damages by pointing to the increased price of oysters following the BP oil spill. However, prices had increased only two (2) to three (3) times not ten (10) or more. Based on these circumstances, it is clear the trial court abused its discretion in making its quantum damages award, which shocks the conscience. Accordingly, we now reduce the damage award to Mr. and Mrs. Cibilic from $5,140,759.00 to $3,001,650.00. This is a more realistic figure considering the amount of damages suffered by the plaintiffs.
CONCLUSION
Based on the above and foregoing reasons, we affirm the trial court's judgment in all respects except in relation to the quantum of damages it awarded to Mr. and Mrs. Cibilic. We reverse and vacate the trial court's quantum award of $5,140,759.00 and render a damage award of $3,001,650.00 to Mr. and Mrs. Cibilic.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED

Louisiana Oyster Lease Damage Evaluation Board